UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,               :
                                        :
             v.                         :        No. 5:17-cr-00523
                                        :        No. 5:22-cv-04868
JEROME DUGGAN,                          :
             Defendant/Petitioner       :

_____

**O P I N I O N**
**Motion to Vacate Sentence, ECF No. 229- Denied**
**Amended Motion to Vacate Sentence, ECF No. 240- Denied and Dismissed**

**Joseph F. Leeson, Jr.**                              **June 5, 2025**
**United States District Judge**


## I.      INTRODUCTION

Jerome Duggan, who was convicted of drug-related offenses, timely filed a Motion to

Vacate Sentence pursuant to 28 U.S.C. § 2255, but did not include any facts to support his

claims.  Thereafter, he filed an Amended Motion to Vacate Sentence beyond the one-year time

limit afforded by 28 U.S.C. § 2255(f), but only a few of the claims therein relate back to the

initial motion.  For the reasons set forth below, the claims in the initial Motion to Vacate and the

claims in the Amended Motion that relate back are denied, all other claims in the Amended

Motion are dismissed as untimely.

## II.     BACKGROUND

### A.      Factual Background – Conviction

On March 29, 2019, following a one-week jury trial, Duggan was convicted of all five counts of

the Superseding Indictment which charged him with: (1) conspiracy to distribute 500 grams or

more of a mixture and substance containing a detectable amount of methamphetamine between

at least March 2016 and May 5, 2016, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A);[1] (2) possession with intent to distribute 50 grams or more of methamphetamine (actual) on or about May 5, 2016, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); (3) possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine on or about May 5, 2016, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); (4) possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); (5) possession with intent to distribute marijuana on or about May 5, 2016, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); and, as to the non-conspiracy counts, aiding and abetting, in violation of 18 U.S.C. § 2. *See* Super. Indict., ECF No. 115; Verdict, ECF No. 197.

On September 23, 2019, Duggan was sentenced to 324 months imprisonment followed by five years of supervised release as well as a fine and a special assessment. Duggan raised two arguments on appeal: that this Court (1) abused its discretion when it admitted evidence under Federal Rule of Evidence 404(b); and (2) committed procedural error when it based his sentence on a disparity analysis with a co-conspirator. *See United States v. Duggan*, No. 19-3220, 2021 U.S. App. LEXIS 35603, at *1 (3d Cir. Dec. 2, 2021). On December 2, 2021, the Third Circuit Court of Appeals affirmed his conviction and sentence. *See* ECF No. 225. Duggan did not file a petition for writ of certiorari in the Supreme Court.

### B.     Procedural History – Motions to Vacate

#### 1.     Initial Motion to Vacate

---

[1]     This count carried a minimum term of imprisonment of ten years and a maximum term of life. *See* 21 U.S.C. § 841(b)(1)(A).

On December 1, 2022, Duggan timely filed the initial Motion to Vacate using the Court's form motion for § 2255 claims.[2]  *See* Mot., ECF No. 229.  However, for each claim, Duggan cursorily asserted ineffective assistance of counsel or violation of due process and referred the Court to a "detailed attachment."  *Id*. at 6-10.  In the field for supporting facts on each claim, Duggan indicated "memorandum of law to follow."  *Id*.

The "detailed attachment" attached to the Motion offers some clarity as to Duggan's claims.  Therein, he asserts, in total, the following:

Ground I.    Trial counsel failed to challenge the plain language of § 841(A) being a distinct offense whereby the jury could not consider multiple acts of distribution to reach a verdict of 500 gram or more (meth) via rule 29 alleging insufficient evidence

Ground II.    Trial counsel failed to investigate recent changes to the Controlled Substance Act which excluded the predicate utilized to enhance [Duggan's] base offense level and sentence

Ground III.    Appellate Counsel performed ineffective [sic] by failing to 'consult' about the advantages and/or disadvantages of proceeding to the Supreme Court on a 404(B) lower Court ruling denying relief

Ground IV.    Trial Counsel's failure to request a special jury verdict form specifying drug type and quantity amount to I.A.C.

Ground V.    Trial Counsel's conflict of interest deprived [Duggan] of a wining argument pertaining to whether a conspiracy even existed

Ground VI.    Appellate Counsel fumbled what would have been a substantive issue in light of Apprendi via Rule 52(B) plain error insufficiency of the evidence presented at trial

---

[2]    The Court's form included the notice required by *United States v. Miller*, 197 F.3d 644 (3d Cir. 1997), advising Duggan of the one-year statute of limitations to file a motion under 28 U.S.C. § 2255 and that: "28 U.S.C. § 2244(b)(3)(A) provides that before you can file a second or successive habeas corpus motion in the District Court you must file a motion with the Third Circuit Court of Appeals for an order authorizing the District Court to consider your second or successive habeas corpus motion."  *See* Habeas 28 U.S.C. § 2255 form at https://www.paed.uscourts.gov/sites/paed/files/documents/forms/frmm2255.pdf.  The form further cautioned that: "You must include in this motion all of the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all of the grounds in this motion, you may be barred from presenting additional grounds at a later date."

*Id*. at 13.  Both the attachment and the Motion were devoid of any factual assertions as required by Rule 2 of the Rules Governing Section 2255 Proceedings.  *See* U.S.C. Sec. 2255 Proc. R. 2(c)(2) (providing that the petition must "state the facts supporting each ground" for relief).[3] Having not yet received Duggan's "memorandum of law to follow," this Court, on March 27, 2023, ordered Duggan to file a "memorandum providing factual support for each of the claims raised in the Motion to Vacate dated December 1, 2022."  *See* ECF No. 236.  Following an Order granting Duggan's request for an extension, *see* ECF No. 238,[4] he filed a Memorandum of Law in support of an *Amended* Motion to Vacate, shortly followed by an Amended Motion to Vacate. *See* ECF Nos. 239-240.  These are dated June 16 and June 23, 2023,[5] respectively.  *See id.*

## 2.    Amended Motion to Vacate

In the Memorandum of Law in support of the Amended Motion to Vacate, Duggan concedes that his initial Motion to Vacate consisted of "loosely argued barebones claims which were somewhat convoluted which did not set forth the crux of the factual support for which he sought relief."  *See* Mem. 2, ECF No. 239.  He also indicates a desire to "clarify and amplify" his prior § 2255 claims.  *Id*.  However, the Amended Motion to Vacate appears to raise new claims altogether.  The Amended Motion lists the following grounds for relief:

> Ground One: "Counsel was ineffective when he failed to seek a judgment of acquittal in movant's case at the close of the government's evidence based on the charged drug conspiracy in count one of the superseding indictment."
>
> Ground Two: "Appellate counsel was ineffective when she failed to raise the argument that the evidence was insufficient to establish that movant was involved in a conspiracy

---

[3]     Duggan was advised of this requirement in the Court's form motion for § 2255 claims.

[4]     The extension, directing Duggan to "file a memorandum providing factual support for each of the claims raised in the Motion to Vacate dated December 1, 2022," was again limited to the claims in the initial Motion.  *See* ECF No. 238.

[5]     The Amended Motion is dated June 14, 2023, but Duggan's cover letter is dated June 23, 2023.  *See* Am. Mot., ECF No. 240.

to distribute 500 grams or more of methamphetamine as charge in count one of the superseding indictment."

Ground Three: "Counsel was ineffective for failing to seek a special jury verdict based on the particular drug types and quantities as charged in the indictment given that each controlled substance carried different penalties."[6]

Ground Four: "Counsel was ineffective on the appeal level when she did not challenge the district court's denial of the suppression of the evidence associated with the search of the residence at 238 West Geopp [sic] Street."

Am. Mot., ECF No. 240. As directed, the Government filed a response in opposition to the Amended Motion, arguing that the Amended Motion should be dismissed without a hearing. *See* Resp., ECF No. 242. Duggan has not filed a reply. *See* ECF No. 241 (Order allowing Duggan to file a reply brief within thirty days of the government's response).

## III.   LEGAL STANDARDS

### A.   Motion to Vacate under 28 U.S.C. § 2255 – Review of Applicable Law

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002). Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)).

---

[6]      In his Memorandum of Law, Duggan adds to this claim as follows: "Trial counsel was ineffective when he failed to: . . . argue that the fact of movant's admission that the drugs found in 238 West Geopp Street, made use of the other 404(b) prior drug charges unnecessary and accumulatively confusing for the jury and hence prejudicial once the statement was introduced through other testimonial evidence in light of the trial court's jury instructions." Mem. at 2-3.

There is a one-year period of limitations to § 2255 motions that runs "from the latest of . . . the

date on which the judgment of conviction becomes final. . . ."  28 U.S.C. § 2255(f).

###    B.    Ineffective Assistance of Counsel – Review of Applicable Law

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance

fell below an objective standard of reasonableness; and (2) the performance was prejudicial to

the defense.  *Strickland v. Washington*, 466 U.S. 668 (1984).  There is a strong presumption that

counsel is effective and the courts, guarding against the temptation to engage in hindsight, must

be "highly deferential" to counsel's reasonable strategic decisions.  *Id.* at 689 (explaining that

courts should not second-guess counsel's assistance").  "*Strickland* does not guarantee perfect

representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110

(2011) (internal quotations omitted).  The court must consider the totality of the evidence, and

the burden is on the petitioner.  *Strickland*, 466 U.S. at 687, 695.  "A habeas petitioner

challenging the voluntary nature of his or her guilty plea faces a heavy burden." *Zilich v. Reid*,

36 F.3d 317, 320 (3d Cir. 1994).  To satisfy the "prejudice" element in guilty plea cases, "the

defendant must show that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474

U.S. 52, 59 (1985).

###    C.    Equitable Tolling

A district court may in extraordinary circumstances grant equitable tolling to allow an

otherwise untimely petition to be reviewed.  *See Miller v. N.J. State Dep't of Corr.*, 145 F. 3d

616, 618 (3d Cir. 1998) (construing § 2244(d)(1) as a statute of limitation, not a jurisdictional

bar, and holding that courts therefore have discretion to "equitably toll in extraordinary

circumstances").  However, "[e]quitable tolling is available 'only when the principle of equity

would make the rigid application of a limitation period unfair.'" *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (quoting *Merritt v. Blaine*, 326 F. 3d 157, 168 (3d Cir. 2003)).  To prove that equity demands tolling the statute of limitations, the petitioner bears the burden to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation and citation omitted).  *See also Jones v. Morton*, 195 F. 3d 153, 159 (3d Cir. 1999) ("[T]he petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims.  Mere excusable neglect is not sufficient." (cleaned up)).  For example, "equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones*, 195 F. 3d at 159 (internal marks and citation omitted).  "The petitioner bears the burden of establishing both extraordinary circumstances and reasonable diligence." *Wallace v. Mahanoy*, 2 F.4th 133, 143 (3d Cir. 2021).

### D.    Relation-back Doctrine

In *Mayle v. Felix*, the Supreme Court addressed the intersection of the one-year time limit in the Antiterrorism and Effective Death penalty Act (AEDPA) and Rule 15(c) of the Federal Rules of Civil Procedure.  *See Mayle v. Felix*, 545 U.S. 644 (2005).  Therein, the Supreme Court held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id*. at 650.  Rather, relation back is appropriate where "the original and amended petitions state claims that are tied to a common core of operative facts." *Id*. at 664.  The "touchstone for relation back is fair notice, because

Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n. 3 (1984)).  Thus, "'amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction, or occurrence in the preceding pleading fall within Rule 15(c)' because the opposing party will have had sufficient notice of the circumstances surrounding the allegations contained in the amendment." *United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).

## IV.     ANALYSIS

### A.     The initial Motion to Vacate is denied on its merits.

"Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).  Nevertheless, the district court is required to consider whether any claims "on their face present substantial issues upon which [it could] proceed[]." *See id.*

In his first ground for relief, Duggan alleged that trial counsel was ineffective for failing to "challenge the plain language of § 841(A) being a distinct offense whereby the jury could not consider multiple acts of distribution to reach a verdict of 500 gram or more (meth) via rule 29 [motion for judgment of acquittal] alleging insufficient evidence." *See* Mot. Attachment.  This argument pertains to Duggan's conviction on Count One for *conspiracy* to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) *and § 846*.[7]

---

[7]     The non-conspiracy counts, which were for a lesser quantity of methamphetamine or for other controlled substances, were based on evidence found during the execution of a search

"Unlike § 841(a), a § 846 conspiracy is a continuing offense that may be proved by aggregating weights from multiple distributions and discontinuous possessions." *United States v. Carey*, 72 F.4th 521, 530 n.10 (3d Cir. 2023). Accordingly, counsel was not ineffective for failing to raise a meritless motion for judgment of acquittal based on the sufficiency of the evidence pertaining to the amount of the drugs involved in the conspiracy.[8] *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (holding that "counsel cannot be deemed ineffective for failing to raise a meritless claim"). This claim is denied.

Duggan's second ground, that trial counsel was ineffective for failing "to investigate recent changes to the Controlled Substance Act . . .", is too vague for this Court to conduct any review. *See Melter v. United States*, No. 15-243 Erie, 2016 U.S. Dist. LEXIS 168966, at *42 (W.D. Pa. Dec. 7, 2016) (denying the § 2255 motion alleging, *inter alia*, that counsel "failed to research any mitigating evidence" as "vague, conclusory, and unsupported by facts"). Duggan did not explain what changes to which he was referring or how such changes impact his case. Because Duggan failed to meet his burden of showing counsel acted unreasonably or that he was prejudiced, this ground is denied.

The third ground for relief, that appellate counsel was ineffective for failing to consult with Duggan "about the advantages and/or disadvantages of proceeding to the Supreme Court on

---

warrant at Duggan's apartment on May 5, 2016, and therefore not based on multiple acts of distribution. *See* N.T. 33:16 – 50:13, Trial Day 2, ECF No. 213.

[8]     In deciding a motion for judgment of acquittal, a court's "finding of insufficiency should be confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (holding that the courts "must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury"). There is no suggestion here that the amount of methamphetamine involved in the conspiracy did not exceed 500 grams. Even if there was, the evidence was more than sufficient to send the case to the jury and to support the jury's verdict that the amount of methamphetamine Duggan conspired to distribute was 500 grams or more. The sufficiency of this evidence is discussed in detail below.

a 404(B) lower Court ruling denying relief," lacks merit.  Although trial counsel has a duty to consult with his client on whether to file a direct appeal in a criminal case, appellate counsel does not have a duty to consult about whether to file for certiorari.  *See Melendez v. United States*, No. 11-6632, 2013 U.S. Dist. LEXIS 127239, at *17-19 (E.D. Pa. Sep. 5, 2013) (finding no duty on appellate counsel to consult with the defendant about whether to seek certiorari because the Supreme Court in *Roe v. Flores-Ortega*, 528 U.S. 470 (1999) "referred to consultations about whether to appeal directly from a conviction, not whether to seek discretionary review by the United States Supreme Court").  Moreover, "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in [the Supreme] Court."  *Wainwright v. Torna*, 455 U.S. 586, 587 (1982).  Without a constitutional right to counsel, Duggan could not be deprived of the effective assistance of counsel for failing to seek certiorari.  *See id.* at 587-88.  The claim fails as a matter of law and is denied.[9]

Duggan's fourth ground, that trial counsel was ineffective for failing to request a special jury verdict form specifying drug type and quantity amount, is without merit because the jury verdict form used in this case contained separate interrogatories about the drug type and quantity proved at trial.  *See* Verdict.  Accordingly, Duggan's claim for ineffective assistance of counsel is denied because his counsel cannot be ineffective for failing to do something he in fact did.

The fifth ground for relief, that trial counsel's conflict of interest deprived Duggan of a wining argument pertaining to whether a conspiracy even existed, is too vague and conclusory to

---

[9]     Duggan also failed to establish that he was prejudiced by appellate counsel's failure to seek certiorari because he has not shown that certiorari would have been granted. *See Melendez*, 2013 U.S. Dist. LEXIS 127239, at *17-19 (denying the § 2255 motion because even if appellate counsel had a duty to consult concerning whether to file a petition for writ of certiorari, the defendant "failed to show that he suffered prejudice by this alleged error [as t]here is no basis to believe that the Supreme Court would have exercised its discretion to review the Court of Appeals decision").

establish his claim or to present an issue allowing for the Court's review.  "In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (holding that "the possibility of conflict is insufficient to impugn a criminal conviction").  However, Duggan alleged no facts to support or even explain the purported conflict of interest.  *See United States v. Laquan Kellam*, No. 1:14-CR-323, 2022 U.S. Dist. LEXIS 10105, at *10 (M.D. Pa. Jan. 19, 2022) (denying the § 2255 petitioner's claim that trial counsel acted under a conflict of interest because the motion contained no facts to suggest a conflict) (citing "*United States v. Harrison*, 910 F.3d 824, 827 (5th Cir. 2018) (requiring more than a speculative or potential conflict); *Cuyler*, 446 U.S. at 350. . .")).  Furthermore, trial counsel did argue that the Government failed to prove a conspiracy existed.  *See* N.T. 24:6 – 27:5, Trial Day 5, ECF No. 215 (In his closing argument, trial counsel asserted that "Mr. Duggan and Mr. Culbreath are not partners, they're not part of a conspiracy.").  Although the argument was ultimately unsuccessful, there is nothing to show that counsel's performance fell below an objective standard of reasonableness.  *See United States v. Ware*, 595 F. App'x 118, 121 (3d Cir. 2014) (affirming denial of the habeas petition because "[a]lthough [counsel's] strategy was unsuccessful, it was not unreasonable"); *Matthews v. United States*, No. 03-072, 2013 U.S. Dist. LEXIS 55671, at *12 (W.D. Pa. Apr. 17, 2013) ("The inability of an attorney to overcome the evidence adduced by the government, which was more than sufficient to allow a rational jury to come to an adverse conclusion, does not negate this strong presumption" of counsel's effectiveness.).  The fifth ground for habeas relief is therefore without merit and is denied.

Finally, Duggan's sixth ground, that appellate counsel fumbled what would have been a substantive issue in light of *Apprendi*[10], is without merit.[11]  "Because application of the Sentencing Guidelines in this case does not implicate a fact that would increase the penalty of a crime beyond the statutory maximum, the teachings of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435, 2000 WL 807189 (2000), are not relevant here."  *United States v. Cepero*, 224 F.3d 256, 267 (3d Cir. 2000) (denying a certificate of appealability form the district court's order denying the § 2255 motion to vacate).  *See also United States v. Early*, 38 F. App'x 755, 757 (3d Cir. 2002) ("*Apprendi* has no application to a sentence determined by the guidelines which is within the statutory maximum sentence.").  Counsel cannot be ineffective for failing to raise a meritless claim so this claim is denied.

For all these reasons, Duggan's initial Motion to Vacate is denied.

**B.    The Amended Motion to Vacate is untimely or unmeritorious.**

The Third Circuit affirmed this Court's judgment on December 2, 2021.  *See* ECF No. 225.  Because Duggan did not file a petition for writ of certiorari in the Supreme Court, his conviction became final ninety days later on March 2, 2022.  Thus, his time to file a Motion to Vacate ended one year later on March 2, 2023.  *See* 28 U.S.C. § 2255(f)(1).  Although Duggan timely filed the initial Motion to Vacate, his Amended Motion to Vacate was filed on July 3,

---

[10]    *Apprendi* held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

[11]    Aside from Duggan's suggestion that the drug quantities from multiple acts should not have been aggregated, which fails as a matter of law for the conspiracy count, there is no contention that the total amount of drugs involved in this case did not exceed 500 grams of a mixture and substance containing methamphetamine, which is what determined the applicable maximum sentence here.  Regardless, such argument would fail for the reasons explained below.

2023, after the one-year limitation. Thus, the claims in the Amended Motion are untimely unless they are excused for some reason, be that equitable tolling or the relation-back doctrine.

### 1.    Equitable Tolling

This Court's only insight into why Duggan failed to timely file his Amended Motion comes from his request for a deadline extension to file his supporting memorandum written on April 14, 2023, which itself is after the one-year time bar expired. *See* ECF No. 237. Therein, Duggan indicates that he was moved between prisons shortly after filing the initial Motion and that the fellow prisoner who was helping him draft this matter was "no longer available." *Id*. at 7. These are not extraordinary circumstances to warrant equitable tolling. Routine and ordinary events of prison life, such as being transferred between penitentiaries, "are not the type of extraordinary events that make it impossible to file a timely habeas petition." *Harper v. United States*, No. 4:07-cr-00339, 2012 U.S. Dist. LEXIS 1712, at *15 (M.D. Pa. Jan. 6, 2012) (holding that the petitioner was "not entitled to equitable tolling because he was transferred from one penitentiary to another, placed in solitary confinement at various times, and not always able to communicate with other prisoners who possessed legal knowledge" because "[p]risoners must take such routine restrictions of prison life into consideration when calculating when to file a federal petition"). Equitable tolling may generally be appropriate when the petitioner has "been *prevented* from asserting his or her rights." *Severs v. Att'y Gen. of New Jersey*, 793 F. App'x 72, 75 (3d Cir. 2019) (quoting *Jones*, 195 F.3d at 159) (emphasis in original). Duggan has offered nothing to suggest he was *prevented* from clarifying or amplifying his claims in a timely manner. Notably too, the Order granting Duggan's extension did not allow him to raise any new or supplemental claims; rather, it directed Duggan to "file a memorandum providing factual support *for each of the claims raised in the Motion to Vacate dated December 1, 2022*." *See* ECF No.

238 (emphasis added). Equitable tolling therefore offers no relief to the untimeliness of the Amended Motion to Vacate.

### 2. Relation-back Doctrine

This Court addresses, in turn, which claims in the Amended Motion are timely by way of the relation back doctrine and which are time barred for failing the same. *See Jackson v. Coleman*, 558 F. Supp. 3d 210, 217 (E.D. Pa. 2021) (treating timeliness under the relation-back doctrine as a threshold issue). At the outset, this Court notes that this analysis is hampered by the complete lack of facts in the initial Motion to Vacate. *See Jordan v. Rivello*, No. 2:22-CV-4865, 2024 WL 2972304 (E.D. Pa. Feb. 9, 2024*), report and recommendation adopted Jordan v. Commonwealth*, No. CV 22-4865, 2024 WL 2959296 at *6 (E.D. Pa. June 12, 2024) (finding a later petition did not relate back to an initial filing where the initial filing "does not assert any claims (or even any substantive facts regarding his conviction or incarceration"). However, because the initial Motion enumerates some claims, however conclusory, this Court will attempt a relation-back analysis.[12]

### a. Ground One of the Amended Motion relates back but is denied.

Ground One of the Amended Motion seeks relief on the basis of ineffective assistance of counsel where trial counsel "failed to seek a judgment of acquittal in movant's case at the close of the government's evidence based on the charged drug conspiracy in count one of the

---

[12]     Generally, the Court notes that an untimely and a timely claim both sounding in the Sixth Amendment right to effective assistance of counsel is not enough to satisfy the relation-back doctrine under *Mayle*. *See Whitney v. Oliver*, No. CV 20-3855, 2022 WL 1082336 (E.D. Pa. Apr. 11, 2022) (finding that a claim for ineffective assistance of counsel alleging trial counsel erred by failing to ensure "a separate interrogatory on the issue of serious bodily injury" did not relate back to a claim for ineffective assistance of counsel alleging trial "counsel failed to seek *reconsideration* of his sentence after it was imposed" on the basis of unreasonability or double jeopardy) (emphasis in original).

superseding indictment." Duggan's Memorandum of Law expounds on the basis of this claim. Therein, he posits that counsel was ineffective for failing to seek a judgment of acquittal "because both the evidence showed through the wiretap conversations and government witness testimony that movant was in a buyer-seller relationship with his alleged co-conspirator, Larry Culbreath." *See* Mem. at 4. In other words, Duggan appears to argue that judgment of acquittal was warranted because he was not in a conspiratorial relationship with Culbreath but rather in a buyer-seller relationship. Liberally construing the motions,[13] this claim arises out of a common core of operative facts to Ground V of the initial Motion.[14] In Ground V, Duggan alleged that trial counsel's conflict of interest deprived him of a "wining argument pertaining to whether a conspiracy even existed." The Amended Motion, when liberally construed, clarifies that the "winning argument" of which he was allegedly deprived was a motion for judgment of acquittal challenging the sufficiency of the Government's evidence of a drug conspiracy.[15] Accordingly, this Court considers the merits of the claim.

"A failure to file a motion for acquittal is not prejudicial where the evidence is sufficient to support a conviction." *United States v. Rahamin*, Nos. 02-154, 07-436, 2008 U.S. Dist.

---

[13]    "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citation omitted).

[14]    Ground One of the Amended Motion bares some resemblance to Ground I of the initial Motion, which challenges the legality of aggregating multiple acts of distribution to reach the 500-gram threshold. However, Ground I of the initial Motion does not share a common core of operative facts with Ground One of the Amended Motion because the former pertains to the quantity of drugs the conspiracy distributed while the latter pertains to the sufficiency of the evidence that a conspiracy existed, i.e. the nature of Duggan's relationships with the co-conspirators. The remaining grounds bare no resemblance. Ground II regarded sentencing, Grounds III and VI regarded appeal. Ground IV regarded a verdict form. These grounds are unrelated to a motion for judgment of acquittal or to evidence of a conspiracy.

[15]    Although Ground V of the initial Motion also referred to a "conflict of interest" and no such conflict is referenced in the Amended Motion, the Amended Motion shows that the alleged conflict of interest is not the basis of his claim.

LEXIS 28986, at *13-14 (W.D. Pa. Apr. 9, 2008) (concluding that the failure of counsel to move for acquittal or a new trial was not prejudicial under the *Strickland* standard). In deciding a motion for judgment of acquittal, a court's "finding of insufficiency should be confined to cases where the prosecution's failure is clear." *Brodie*, 403 F.3d at 133 (holding that the courts "must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury").

Here, there was sufficient evidence of a conspiracy to support Duggan's conviction of conspiracy to distribute methamphetamine. At trial, the Government presented evidence of intercepted[16] phone conversations of Duggan and of his co-conspirators.[17] In one such call on April 17, 2016, at approximately 6:13 P.M., Culbreath asked Beitler, both of whom were named in the overt acts portion of Duggan's Superseding Indictment, if he could get one ounce[18] of methamphetamine.[19] *See* N.T. 214:6 – 217:10, Trial Day 2. Beitler responded that he was "not around, but [] could probably get it done." *Id.* at 214:14-19. In a call at 7:44 P.M. that evening, Beitler asked Culbreath how long he would be and they "bumped up" the order to two ounces of methamphetamine. *See id.* at 216:1-24. Culbreath told Beitler "Let me call my bro. I'll call you right back." *Id.* Approximately fifteen minutes later, at 8:02 P.M., Culbreath called Duggan and stated that he needed two ounces of methamphetamine. *See id.* at 217:12 – 218:2. Duggan replied "All right. I got you." *See id.* at 218:13. Beitler and Culbreath exchanged text

---

[16]    The calls mentioned herein were recorded and played for the jury.

[17]    Duggan was charged with conspiring with Larry Haywood Culbreath, Jr., a/k/a "Harlem" and Fredrick Curry, aka "Fredrick Anthony Curry." *See* Super. Indict.

[18]    One ounce is approximately 28.35 grams. *See* N.T. 110:16-17, Trial Day 2. One kilogram is approximately 2.2 pounds. *See id.* at 72:14.

[19]    *See also* N.T. 240:16 - 244:10-17, Trial Day 3, ECF No. 214 (Beitler testified that he purchased methamphetamine from Culbreath.)

messages, *see id.* at 218:18 – 219:10, then a call at 9:05 P.M. between Culbreath and Duggan confirmed that they met up at the Madison Inn in Allentown, *see id.* at 219:12 – 221:5. Shortly thereafter, at 9:20 P.M., Culbreath texted Beitler and said that he was ready to deliver the methamphetamine. *See id.* at 221:10-14. This evidence was sufficient from which a jury could find that Duggan supplied Culbreath with the methamphetamine that Culbreath then distributed to Beitler, but this was not the only evidence of conspiracy to distribute.

In intercepted calls and texts on April 19, 2016, between Culbreath and Eric Boehm, another person named in the overt acts section of the Superseding Indictment, Boehm told Culbreath that he needed an ounce of methamphetamine and that his drug customers were "loving" the methamphetamine. *See* N.T. 9:13 – 14:14, Trial Day 3, ECF No. 214. Culbreath called Duggan that evening and they talked about meeting in the morning about the methamphetamine. *See id.* at 14:16 – 15:21. The next day at 11:10 A.M., Culbreath called Duggan. *See id.* at 16:15 – 19:1. Duggan reported that he had the methamphetamine and the two discussed a location to meet. *See id.* A few hours later, Duggan called Culbreath and asked who the methamphetamine was for and how Culbreath knew this person (Boehm).[20] *See id.* at 19:8 – 20:22 (Duggan asked Culbreath: ". . . who the boy . . . you got the pass to."). This evidence showed that Duggan knew the methamphetamine he was going to, and did,[21] give to

---

[20]    During this call, Duggan commented that "the whole town is on surveillance" and about cars "following you," N.T. 21:9, Trial Day 2, which the evidence showed was in response to Duggan spotting the DEA agents that were surveilling him, *see id.* at 21:9 – 24:13.
[21]    Evidence was presented regarding the DEA surveillance that observed Duggan arrive to meet Culbreath. *See* N.T. 33:19 – 34:8, Trial Day 2.

Culbreath was for redistribution to Boehm. This evidence, alone, was sufficient for the jury to find each of the elements of the conspiracy,[22] but again it was not the only evidence.[23]

Duggan has therefore failed to show that he was prejudiced by counsel's failure to move for judgment of acquittal. *See Gov't of the V.I. v. Joseph*, 465 F. App'x 138, 142 (3d Cir. 2012) (determining that the defendant could not prevail on his ineffective assistance of counsel claim because "the evidence was sufficient to prove all of the elements of the crime; therefore, counsel

---

[22]    The jury was instructed:
   In order for you to find Mr. Duggan guilty of conspiracy to distribute a controlled substance, you must find that the Government proved beyond a reasonable doubt each of the following three elements. First, that two or more persons agreed to distribute a controlled substance. Second, that Mr. Duggan was a party to or a member of that agreement. And third, that Mr. Duggan joined the agreement or conspiracy knowing of its objective to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective, that is, that Mr. Duggan at least -- and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective.
N.T. 58:18 – 59:5, Trial Day 5.

[23]    Evidence was also presented of a recorded call between Boehm and Culbreath on April 24, 2016, at 12:27 P.M., in which Boehm reported that he had already sold all the methamphetamine and needed two more ounces. *See* N.T. 98:24 – 101:1, Trial Day 3. Less than a minute after that call ended, Culbreath called Duggan and ordered two more ounces of methamphetamine. *See id.* at 101:4-19.

   The jury also heard and saw intercepted conversations from the end of April 2016, wherein Culbreath turned to a drug source in California to get additional methamphetamine for Boehm. *See id.* at 30:4-10. This drug source, Frederick Curry, is a named co-conspirator with Duggan. *See* Super. Indict. The intercepted calls and texts showed that Duggan, Curry, and Culbreath agreed they would send $16,500 to California to pay for three and a half pounds of methamphetamine (and a quarter pound of marijuana) to be sent to Allentown. *See id.* at 30:12 – 31:4. DEA surveillance observed the three co-conspirators meet after discussing the money. *See id.* at 31:7-9. The package information for the money going out and the package information (tracking numbers) for the package coming to Allentown were exchanged in texts between Curry, Culbreath, and Duggan. *See id.* at 31:5-7. Unbeknownst to the co-conspirators, on May 4, 2016, the DEA, working in conjunction with Postal Inspectors, intercepted the package coming to Allentown containing the methamphetamine. *See id.* at 30:21-24. The package contained crystal methamphetamine weighing approximately three and a half pounds (more than 1500 grams), and approximately a quarter of a pound of marijuana. *See id.* at 175:8-13.

could have reasonably concluded that filing a Rule 29 motion would have been futile").  Ground one of the Amended Motion is denied.

                    b.        **Ground Two of the Amended Motion is dismissed and denied.**

Ground Two of the Amended Motion alleges that, "Appellate counsel was ineffective when she failed to raise the argument that the evidence was insufficient to establish that movant was involved in a conspiracy to distribute 500 grams or more of methamphetamine as charge[d] in count one of the superseding indictment."  In his accompanying memorandum, Duggan states: "[l]ikewise, movant's appellate counsel was ineffective for failing to raise a [sic] insufficiency of the evidence argument under the plain error standard."  Mem. 6.  The only claims against appellate counsel in the initial Motion were in Grounds III and VI.  These grounds, regarding consultation about a certiorari petition and an *Apprendi* issue, respectively, do not share a common core of operative facts with Ground Two of the Amended Motion challenging sufficiency of the evidence.  As such, there is caselaw in this district concluding that relation back does not apply.  *See, e.g. Hook v. Smith*, No. 18-CV-4635, 2020 U.S. Dist. LEXIS 234908, at *8-9 (E.D. Pa. Dec. 15, 2020) (concluding that the petitioner's "claim in the amended petition regarding the conduct of trial counsel differs in both 'time and type' to the claims in his initial habeas petition regarding the ineffectiveness of counsel at the appellate PCRA proceedings").

However, the Third Circuit Court of Appeals in *Underwood* left open the question of whether a later ineffectiveness claim at the trial level could be said to have arisen out of a common core of operative facts as a timely claim for ineffectiveness at the appellate level for purposes of relation back principles.  *See United States v. Underwood*, 246 F. App'x 92, 94 n.2 (3d Cir. 2007).  Therefore, in an abundance of caution, this Court considers whether any of the initial grounds asserting trial counsel's ineffectiveness relate to the sufficiency of the evidence to

convict Duggan of conspiracy to distribute 500 grams or more of methamphetamine as charged in count one. One does. Ground V of the initial Motion, liberally construed, asserts trial counsel's ineffectiveness for not challenging the evidence on the conspiracy count. Nevertheless, even if Ground Two of the Amended Motion is timely under the relation-back principles, it is denied on its merits for the same reasons discussed herein for denying Ground One of the Amended Motion.

Ground Two of the Amended Motion is dismissed and denied.

### c.    Ground Three of the Amended Motion is dismissed and denied.

Ground Three of the Amended Motion is disaggregated into two unrelated parts.

First, in his Amended Motion, Duggan argues that "Counsel was ineffective for failing to seek a special jury verdict based on the particular drug types and quantities as charged in the indictment given that each controlled substance carried different penalties." This is essentially the same claim put forward in Ground IV of Duggan's initial Motion and therefore relates back. As discussed herein, this claim lacks merit because the jury verdict form used in this case did indeed contain separate inquiries concerning the drug type and quantity proved at trial. *See* Verdict. Accordingly, Duggan's claim for ineffective assistance of counsel is denied because his counsel cannot be ineffective for failing to do something he in fact did.

Second, in his Memorandum of Law, Duggan adds to this claim as follows: "Trial counsel was ineffective when he failed to: . . . argue that the fact of movant's admission that the drugs found in 238 West Geopp Street, made use of the other 404(b) prior drug charges unnecessary and accumulatively confusing for the jury and hence prejudicial once the statement was introduced through other testimonial evidence in light of the trial court's jury instructions." Mem. 2-3. Duggan suggests that counsel's ineffectiveness in this regard became obvious when

this Court allegedly instructed the jury that to convict him on counts one through five, it was required to convict him of count one.  *See id.* at 10.  The initial Motion to Vacate featured a claim for ineffective assistance of appellate counsel for failing to "'consult' about the advantages and/or disadvantages of proceeding to the Supreme Court on a 404(b) lower court ruling."  The "lower court ruling" references the admissibility of facts supporting Duggan's 2008 drug conviction which was the subject of a Motion in Limine filed by the government.  *See* 404b Mot., ECF No. 175.  These claims arise out of a separate core of common fact.  Most simply, the Initial Motion to Vacate regarded the advisability of seeking discretionary review of a Rule 404(b) ruling, while the claim raised in the Amended Motion to Vacate challenges trial counsel's alleged failure to object to the admissibility of the evidence, which he suggests was heightened by the jury instructions.  The plain difference in these legal theories prevents relation back.[24] Moreover, because trial counsel did object to the admissibility of the 404(b) evidence as both confusing and prejudicial,[25] he cannot be ineffective for failing to do something that he in fact did.  Because this Court and the Third Circuit Court of Appeals thoroughly considered and denied the argument,[26] Duggan has also failed to establish any prejudice.  Finally, contrary to

---

[24]     To the extent that Ground Three of the Amended Motion is more of a Rule 403 argument, *see* F.R.E. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."), it is encompassed in the 404(b) challenge, *see United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) ("To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must . . . satisfy Rule 403. . .").

[25]     On February 19, 2019, Duggan's trial counsel filed a Response in Opposition to the Government's motion to admit 404(b) evidence, arguing that such evidence ran afoul of Rule 404(b) as plain propensity evidence that would confuse the jury and unduly prejudice Duggan if admitted.  *See* ECF No. 183.  Additionally, trial counsel renewed his objection at trial to the admission of 404(b) evidence.  *See* N.T. 3:2-5, Trial Day 4, ECF No. 223 ("I believe this is the witness that will bring the 404(b) evidence. Because of that, I would renew my objection for the record for the same arguments that I raised in the written response.").

[26]     In an Opinion and Order issued March 7, 2019, this Court weighed the probative value of the 404(b) evidence against any danger of unfair prejudice and concluded that the evidence was

Duggan's contention that this Court instructed the jury that to convict him on counts one through five, it was required to convict him of count one, the jury was instructed that: "Each offense is charged in a separate count of the indictment. The number of offenses charged is not evidence of guilt, and this should not influence your decision in any way. You must separately consider the evidence that relates to each offense, and you must return a separate verdict for each offense." N.T. 74:11-17, Day 5 (jury instructions).  Ground Three of the Amended Motion is dismissed as untimely and denied on the merits.

> **d.    Ground Four of the Amended Motion is dismissed as untimely.**

Finally, in Ground Four of the Amended Motion, Duggan asserts ineffective assistance of appellate counsel for failing to challenge the denial of his suppression motion arising out of the evidence collected with the search of his apartment at 238 West Geopp Street.  This claim shares no common core of operative fact with any claim that may have been raised in the initial Motion because, plainly, the initial Motion makes no mention of the suppression issue.

Because Ground Four of the Amended Motion does not relate back to Duggan's initial Motion and was raised well beyond the one-year time limitation, it is dismissed as untimely.

> **C.    There is no basis for the issuance of a certificate of appealability.**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'"  *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).  "Where a district court has rejected the

---

admissible.  *See* Opn., ECF No. 184.  On direct appeal, the Third Circuit concluded that "[t]he District Court's handling of the 404(b) evidence was sound. The probative value of Duggan's previous drug trafficking is obvious and consistent with our precedent."  *See United States v. Duggan*, App. No. 19-3220 at ECF No. 76 (issued December 2, 2021).

constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* For the reasons set forth herein, Duggan has not made a substantial showing of the denial of a constitutional right, nor would jurists of reason find the Court's assessment debatable or wrong.

## V.    CONCLUSION

For the above noted reasons, all the claims raised in the initial Motion to Vacate lack merit and are denied. Duggan rewords some of these claims in his Amended Motion to Vacate and they too are denied as meritless. To the extent that the Amended Motion raises new claims for the first time they are dismissed as untimely.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge